CASE NO. 22-5603

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

CALVIN COGDILL,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT IN THE EASTERN DISTRICT
OF TENNESSEE, AT CHATTANOOGA

BRIEF OF APPELLANT

JENNIFER NILES COFFIN
Federal Defender Services of
  Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, Tennessee  37929
(865) 637-7979
Attorney for Calvin Cogdill

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT .................................. 1

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ......................................................................................... 2

STATEMENT OF THE ISSUES PRESENTED ........................................ 3

STATEMENT OF THE CASE AND RELEVANT FACTS....................... 4

SUMMARY OF THE ARGUMENT......................................................... 12

ARGUMENT............................................................................................. 14

A.    The Supreme Court's interpretation of the term "occasion" in
      *Wooden* fundamentally changed the way the ACCA applies, in
      both substance and procedure....................................................... 14

B.    Under *Wooden*'s broader interpretation of "occasion," the
      *Shepard* evidence does not necessarily prove that Mr. Cogdill
      committed the offenses in PSR paragraphs 66 and 67 on occasions
      different from one another............................................................. 19

C.    The district court violated the Fifth and Sixth Amendments by
      finding the occasions-different fact when that fact was not alleged
      in the indictment, admitted by Mr. Cogdill, or found beyond a
      reasonable doubt by a jury. .......................................................... 28

CONCLUSION ......................................................................................... 39

CERTIFICATE OF SERVICE ................................................................ 40

CERTIFICATE OF COMPLIANCE ....................................................... 40

DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS ........................................................................... 41

# TABLE OF AUTHORITIES

**CASES**

*Alleyne v. United States*,
570 U.S. 99 (2013) ................................................................ 31

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998) .............................................................. 36

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) .............................................................. 31

*Descamps v. United States*,
570 U.S. 254 (2013) ......................................................... 18, 32

*Mathis v. United States*,
136 S. Ct. 2243 (2016) .................................................... 32, 34

*Nijhawan v. Holder*,
557 U.S. 29 (2009) ........................................................... 9, 36

*Shepard v. United States*,
544 U.S. 13 (2013) ................................................................ 32

*United States v. Ausmus*,
774 F.2d 722 (6th Cir. 1985) ................................................ 22

*United States v. Brady*,
988 F.2d 664 (6th Cir. 1993) (en banc) ................................ 30

*United States v. Castleman*,
572 U.S. 157 (2014) .............................................................. 35

*United States v. Harris*,
200 F. App'x 472 (6th Cir. 2006) .......................................... 22

*United States v. Hayes*,
555 U.S. 415 (2009) ................................................. 9, 34, 35, 37

*United States v. Hennessee*,
932 F.3d 437 (6th Cir. 2019) ................................... 10, 19, 33

*United States v. Paige*,
634 F.3d 871 (6th Cir. 2011) ................................................ 30

*United States v. Rockymore*,
909 F.3d 167 (6th Cir. 2018) ................................................ 27

*United States v. Southers*,
866 F.3d 364 (6th Cir. 2017) ................................................ 19

*United States v. Will,*
   612 F. App'x 265 (6th Cir. 2015) .................................................. 22, 24
*United States v. Williams,*
   39 F.4th 342 (6th Cir. 2022) ................................................. 18, 27, 28
*United States v. Wooden,*
   945 F.3d 498 (6th Cir. 2019) .......................................................... 16
*Wooden v. United States,*
   142 S. Ct. 1063 (2022) .............................................................*passim*

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. amend. V ..................................... 1, 3, 4, 12, 28, 29, 30, 31, 34
U.S. Const. amend. VI.................................... 1, 3, 4, 12, 28, 29, 30, 31, 34
8 U.S.C. § 1101(a)(43)(K) ................................................................ 36
8 U.S.C. § 1101(a)(43)(P) ................................................................ 36
8 U.S.C. § 1326(a) .......................................................................... 36
8 U.S.C. § 1326(b)(2) ...................................................................... 36
18 U.S.C. § 921(a)(33)(A) ................................................................ 35
18 U.S.C. § 922(g)(1) ........................................ 4, 5, 7, 8, 9, 14, 28
18 U.S.C. § 922(g)(9) .......................................................... 34, 35, 37
18 U.S.C. § 924(a)(2) ........................................................................ 7
18 U.S.C. § 924(e) ............................................ 1, 3, 4, 6, 14, 37
18 U.S.C. § 3231 .............................................................................. 2
18 U.S.C. § 3742(a)(1) ...................................................................... 2
28 U.S.C. § 1291 .............................................................................. 2
Fed. R. Evid. 404(b) ........................................................................ 22
Sixth Circuit Rule 34(a) .................................................................... 1

## U.S. SENTENCING COMMISSION MATERIALS

U.S.S.G. § 1B1.3(a)(2) ........................................................ 21, 22, 24, 25
U.S.S.G. § 2K2.1(a)(2) ............................................................... 5, 6
U.S.S.G. § 4A1.2(a)(2) ........................................................ 7, 21, 23
U.S.S.G. § 5G1.1(a).......................................................................... 8
U.S.S.G. § 5G1.1(c)(2)........................................................................ 8

**OTHER MATERIALS**

Brief in Opposition to Petition for Certiorari,
 *Reed v. United States*, No. 22-36 (U.S. Dec. 12, 2022)................. 17-18
Notification of Changed Legal Position,
 *United States v. Cook*, No. 22-5056 (6th Cir. Aug. 18, 2022) ............ 18
Response to Sentencing Memorandum,
 *United States v. Dutch*, No. 16-cr-1424 (D.N.M. July 20, 2022) ....... 18

# STATEMENT REGARDING ORAL ARGUMENT

This case presents the question whether the district court erred when it sentenced Calvin Cogdill under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and in particular, whether it erred when it made the circumstance-specific determination that he previously committed three drug trafficking offenses on "occasions different from one another." Answering this question will require this Court to engage in a factual inquiry in light of the Supreme Court's recent construction of the term "occasion" in *Wooden v. United States*, 142 S. Ct. 1063 (2022), and its description there of the full range of factors that underlie the occasions-different determination. Mr. Cogdill alternatively argues that the district court could not, consistent with the Fifth and Sixth Amendments, make the factual finding necessary for the sentence imposed, when Mr. Cogdill was not charged with the aggravated ACCA offense. While current Circuit precedent forecloses this argument, he raises it to preserve it.

The legal arguments are sufficiently complex and unique that the decisional process would be significantly aided by oral argument. Pursuant to Rule 34(a), Rules of the Sixth Circuit, oral argument is requested.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal of the sentence imposed in a federal criminal prosecution arising out of acts occurring in the Eastern District of Tennessee in 2020. The District Court below exercised jurisdiction pursuant to 18 U.S.C. § 3231.

This is an appeal as of right of the judgment of the United States District Court for the Eastern District of Tennessee entered on July 5, 2022. (Judgment, R. 47, PageID #312-18.) This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

Mr. Cogdill timely filed a Notice of Appeal on July 15, 2022. (Notice of Appeal, R. 51, PageID #372.)

## STATEMENT OF THE ISSUES PRESENTED

I.     Whether, under current circuit precedent and in light of the Supreme Court's recent construction of the term "occasion" in *Wooden v. United States*, 142 S. Ct. 1063 (2022), the district court erred when it found that two of Mr. Cogdill's prior methamphetamine convictions were for offenses committed on "occasions different from one another," thereby subjecting him to the aggravated 15-year penalty under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

II.     Whether, in any event, the district court may make the uncharged, non-elemental factual determination that a person committed three prior offenses "on occasions different from one another," as required by the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), or whether instead the Fifth and Sixth Amendments require that fact to be charged in the indictment and proven to the jury beyond a reasonable doubt.

## STATEMENT OF THE CASE AND RELEVANT FACTS

Calvin Cogdill was sentenced to 180 months in prison under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), upon his conviction for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). His designation as an armed career criminal, and the enhanced sentence, depended on the district court's finding at sentencing, by a preponderance of the evidence and over his objection, the uncharged fact that that he incurred two prior methamphetamine convictions in 2016 for offenses "committed on occasions different from one another." Mr. Cogdill challenges that judicial factfinding on two grounds, each of which provides an independent reason for reversal: (1) the *Shepard* evidence does not necessarily establish that he committed the two offenses on different "occasions" as that term has now been construed; and (2) the district court, by engaging in that factfinding and imposing the ACCA's aggravated 15-year mandatory minimum, violated the Fifth and Sixth Amendments.

*Background.* Mr. Cogdill was on state parole in January 2020 when law enforcement officers in Bradley County, Tennessee searched his home with his permission and found a rifle and ammunition.

(Presentence Investigation Report (Sealed) ¶¶ 5-6, 16 ("PSR"), R. 37, PageID #130.) During the investigation, Mr. Cogdill admitted to stealing and selling between 20 and 25 firearms. (*Id.* ¶ 18.) Several months later, he was charged in the Eastern District of Tennessee in a one-count indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Indictment, R. 1, PageID #1; PSR ¶ 1, PageID #130.) He was not charged with having committed any previous offenses on different occasions. (*Ibid.*) On February 16, 2022, he pled guilty as charged, without a plea agreement, admitting nothing but the elements of the § 922(g) offense as charged. (PSR ¶ 1, PageID #130; Factual Basis, R. 31, PageID #64-66; Change of Plea Tr., R. 53, PageID #382, 386-87.)

The Probation Office prepared a presentence report in which it calculated Mr. Cogdill's sentencing range. Under the U.S. Sentencing Guidelines, the base offense level for his conviction under § 922(g)(1) is 24, which reflects a 10-level enhancement due to his having at least two prior "controlled substance offenses." (PSR ¶ 27, R. 37, PageID #134-35.) *See* U.S.S.G. § 2K2.1(a)(2). Based on the relevant conduct described in the PSR, four levels were added because the offense involved 8 to 24

firearms; one level was added because the offense involved stolen firearms; and four levels were added because Mr. Cogdill was selling firearms, for a total of nine additional levels and an adjusted offense level of 33. (PSR ¶¶ 28, 29, 30, 35, R. 37, PageID #135.) With three levels off for acceptance of responsibility, his total offense level as calculated under § 2K2.1 is <u>30</u>. (PSR ¶¶ 35, 37, 38, PageID #135-36.) In Criminal History Category VI due to having 19 criminal history points as calculated under the Chapter Four criminal history rules, Mr. Cogdill has an advisory guideline range—before any consideration of the applicable statutory penalty range or the ACCA—of 168 to 210 months. (PSR ¶ 70, 100, PageID #148, 154.)

The PSR deemed Mr. Cogdill to be an Armed Career Criminal under 18 U.S.C. § 924(e), however, based on its determination that he had previously been convicted of at least three "serious drug offenses" on "different occasions." (PSR ¶ 36, PageID #135-36.) The PSR identified the three ACCA predicates as follows:

> ¶ **62** A Georgia conviction for which he was sentenced on April 27, 2004 for manufacturing methamphetamine (PSR ¶ 62, PageID #143);

¶ **66** A Tennessee conviction in Bradley County, Tennessee, for which he was sentenced on January 11, 2016, for selling/delivering more than 0.5 grams of methamphetamine (PSR ¶ 66, PageID #146); and

¶ **67** A Tennessee conviction in Bradley County, Tennessee, for which he was sentenced on January 11, 2016, for possessing methamphetamine for resale (PSR ¶ 67, PageID #147).

As for the two 2016 Bradley County convictions described in paragraphs 66 and 67 and for which he was sentenced on the same day, the PSR described the offense in paragraph 66 as committed on June 12, 2014 and the offense in paragraph 67 as committed on September 15, 2014. (PSR ¶¶ 66, 67, PageID #146-47.)[1]

The ACCA designation had the effect of increasing Mr. Cogdill's statutory penalty range from zero to ten years for an ordinary violation of 18 U.S.C. § 922(g)(1), *see* 18 U.S.C. § 924(a)(2), to fifteen years to life

---

[1] At the same time, because the two offenses were not separated by an intervening arrest and he was sentenced for them on the same day, the two offenses were treated as one under the Guidelines' rule at U.S.S.G. § 4A1.2(a)(2) for counting prior sentences. (PSR ¶ 66, 67, PageID #146-47 (citing § 4A1.2(a)(2) and assigning a total of three criminal history points to the two convictions, rather than six)).

under the ACCA. (PSR ¶ 99, PageID #154.) It also increased Mr. Cogdill's effective guideline range. While the ACCA designation did not change his total offense level (30) and Criminal History Category (VI), (*see* PSR ¶ 36, 70-71, PageID #135, 148), it had the effect of increasing his "guideline sentence" from a flat 120 months (because capped by the ordinary 10-year statutory maximum for a § 922(g)(1) conviction), *see* U.S.S.G. § 5G1.1(a), to a guideline range of 180 to 210 months, as required by the aggravated ACCA penalty range, *id.* § 5G1.1(c)(2).  In other words, the ACCA designation increased the bottom of his guideline range by a mandatory five years.

Before sentencing, Mr. Cogdill objected to the ACCA designation. He argued that the two 2016 Bradley County methamphetamine offenses set forth in paragraphs 66 and 67 of the PSR were "clearly related" and "intertwined," being committed within a few months of each other, in the same county and not separated by an intervening arrest, and possibly involving continuous conduct, so therefore cannot be found to have necessarily been committed on different occasions under the multi-factored test set forth in *Wooden v. United States*, 142 S. Ct. 1063 (2022)—especially when viewed in light of  the rule of lenity.  (Def.'s

Objections, R. 40, PageID #164-66.) He alternatively argued that, as he was charged and pled guilty only to the simple felon-in-possession offense under § 922(g)(1), the district court could not constitutionally make the factfinding required to conclude these prior offenses were committed on different occasions and impose the aggravated ACCA penalty, even if limited to considering information appearing in *Shepard* documents—a finding of fact that district courts are currently permitted to do in this Circuit. (*Id.*, PageID #166-75.) Rather, he argued, the occasions-different fact is more properly viewed as an element of the enhanced ACCA offense that, in this criminal context, must be charged in the indictment and proved to the jury beyond a reasonable doubt (or admitted by the Mr. Cogdill). He pointed in support to the similar circumstance-specific facts at issue in *United States v. Hayes*, 555 U.S. 415 (2009) (fact that predicate misdemeanor crime was committed by a person in a specified domestic relationship with the victim), and at issue in *Nijhawan v. Holder*, 557 U.S. 29 (2009) (fact that alien's predicate fraud offense was one "in which the loss to the victim exceeded $ 10,000")—both of which the Supreme Court recognized as facts beyond the elements of the prior convictions themselves. (*Id.* at PageID #171-72.)

Even so, Mr. Cogdill acknowledged current Circuit precedent, *United States v. Hennessee*, 932 F.3d 437 (6th Cir. 2019), which holds that a district court may find by a preponderance of the evidence the fact that offenses were committed on different occasions, and may do so based on non-elemental information contained in the *Shepard* documents. (*Id.* at PageID #168-69, 175.)

Mr. Cogdill was sentenced on June 29, 2022. At sentencing, he still did not admit that the prior 2016 methamphetamine offenses in paragraphs 66 and 67 of the PSR were committed on different "occasions" as that term has been defined in *Wooden*. (*See* Sent'g Tr., R. 49, #326-47.) He emphasized that both were for "intertwined" drug trafficking conduct for which he sentenced on the same day, with no intervening arrest, and that they could have been in close proximity and part of a continuing scheme involving the same drug source over a relatively short period from June to September. (*Id.* at PageID #338-40, 342, 345-46.) And he continued to preserve his constitutional objection to the district court's factfinding on this matter regardless. (*Id.* at PageID #335-36.)

The district court overruled his objection. It acknowledged that the *Shepard* documents do not necessarily establish different locations for

the two offenses, but found that it was enough that the *Shepard* documents indicated that the offenses were committed on different dates. (*Id.* at PageID #357 "The Court finds that the dates between the two offenses is sufficient to satisfy the – the law.").) The court also noted that the methamphetamine offenses were "not the same," because (it said) one was for selling and one was for possession, and because Mr. Cogdill had a co-defendant in one but not the other. (*Id.*)

Regarding Mr. Cogdill's constitutional challenge, the district court considered itself bound by Circuit precedent to overrule it. (*Id.* at PageID #358.) The court sentenced him to the ACCA minimum sentence of 180 months, to be followed by five years of supervised release. (*Id.* at PageID #365-66; Judgment, R. 47, PageID #313.)

## SUMMARY OF THE ARGUMENT

The district court clearly erred when it found that Mr. Cogdill's two 2016 Tennessee methamphetamine offenses were committed on different "occasions," as the Supreme Court recently construed that term in *Wooden v. United States*, 142 S. Ct. 1063 (2022). Just a few months apart, committed in the same county and both involving conduct involving the sale of methamphetamine, the two offenses were not separated by an intervening arrest. Under the multi-factored test laid out in *Wooden*, which closely tracks well-established concepts in the sentencing context, the only conclusion the *Shepard* evidence necessarily supports is that the offenses were committed at the same location as part of a common scheme or purpose—two factors weighing against a finding of different occasions. In the absence of any significant intervening event weighing the other direction, and in light of the ACCA's purpose and the rule of lenity, the Court should hold that the two offenses were committed on a single "occasion" and that Mr. Cogdill was therefore erroneously sentenced under the ACCA.

Alternatively, the district court violated Mr. Cogdill's rights under the Fifth and Sixth Amendments when it made the finding of fact, by a

preponderance of evidence and based on information contained in state court records, that he committed the two offenses on different "occasions." *Wooden* and this very case make clear that this is a fact-laden determination going well beyond the elements of any offense. The Supreme Court has previously explained that in the criminal context, similar circumstance-specific facts must be charged in the indictment and found by a jury beyond a reasonable doubt. Because neither happened here, Mr. Cogdill cannot be subject to the ACCA's severe penalty.

# ARGUMENT

### A. The Supreme Court's interpretation of the term "occasion" in *Wooden* fundamentally changed the way the ACCA applies, in both substance and procedure.

The ACCA applies to increase the penalty range for a person convicted of violating 18 U.S.C. § 922(g)(1) only if the person previously committed at least three ACCA-qualifying offenses "on occasions different from one another. 18 U.S.C. §924(e)(1). On March 7, 2022, the Supreme Court for the first time interpreted the term "occasion" as used in the ACCA and held that it must be interpreted consistent with its ordinary meaning. Under its ordinary meaning, the Court held, "occasion" means "essentially an episode or event" under which "multiple crimes may occur on one occasion even if not at the same moment." *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022). The Court explained that "an occasion may . . . encompass a number of non-simultaneous activities; it need not be confined to a single one." *Id.* at 1070. Put another way, "an 'occasion' means an event or episode—which may, in common usage, include temporally discrete offenses." *Id.* As a result, in Wooden's case, the ten burglaries he committed at a single storage facility over the course of a night were improperly counted as ten

separate offenses for ACCA purposes and should have instead been counted as committed on one "occasion." *Id.* at 1074.

*Wooden* makes clear that a broad range of information goes into the determination whether offenses were committed on different "occasions," and confirmed the circumstance-specific and contextual nature of the inquiry. These circumstances include the timing, location, character, and relationship of the offenses, with no one circumstance necessarily predominating. Offenses committed "close in time, in an uninterrupted course of conduct, will often count as part of one occasion." *Id.* at 1071. But offenses separated by "substantial gaps in time or significant intervening events" often (but not always) may not. *Id.* "Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event." *Id.* Also, "the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion." *Id.*

The Supreme Court's interpretation of "occasion" dramatically changed the law in this Circuit, the circuit out of which *Wooden* arose. In *Wooden*, this Court applied longstanding precedent to hold that each of ten burglaries at a storage facility, because each was complete upon entry into each unit with intent to commit a crime, was a discrete "occasion" so counted as a separate ACCA predicate offense, even though they were all committed at the same storage facility over the course of a single night. *See United States v. Wooden*, 945 F.3d 498, 505-06 (6th Cir. 2019). Under the Supreme Court's far broader interpretation, however, it was easy to conclude that his ten burglaries were committed on a single occasion. *Wooden*, 142 S. Ct. at 1074. However, the Court cautioned that in harder cases the question should be answered while keeping in mind the history and purpose of the ACCA. The ACCA is intended to target repeat violent offenders, "those who commit a large number of fairly serious crimes as their means of livelihood [and so] are especially likely to inflict grave harm when in possession of a firearm." *Id.* at 1074 (internal quotation marks omitted); *id.* ("[T]he statute targets a particular subset of offenders—those who have repeatedly committed violent crimes."

(internal quotation marks omitted)).  In short, context matters, and will depend on the specifics of every case.

In clarifying that a single "occasion" encompasses multiple offenses not separated by a significant intervening event or substantial gap in time, and having a common scheme or purpose, the Supreme Court has both narrowed the application of the ACCA and necessitated renewed scrutiny of the question whether the broad and circumstantial factual question the occasions-different inquiry entails may be constitutionally done by the sentencing judge, or if instead the occasions-different fact must be alleged in the indictment and proved to a jury beyond a reasonable doubt. *Id.* at 1087 n.7 (Gorsuch, J., concurring) (noting that this constitutional question "simmers beneath the surface" of every ACCA case, leaving "little doubt" that the courts must address it "soon"). Indeed, after scrutinizing the circuit courts' current approach in light of *Wooden*'s expansive interpretation of the term "occasion" in this context, the Department of Justice now agrees that a jury, not a judge, must find that offenses were committed on different occasions before the person may be sentenced under the ACCA, and has been notifying courts of its changed position. *See*, *e.g.*, U.S. Brief in Opposition to Cert. Pet., *Reed v.*

*United States*, S. Ct. No. 22-36 (Dec. 12, 2022) (distributed for conference of Jan. 6, 2023) ("[T]he government now acknowledges, given the nature of the different-occasions inquiry articulated in *Wooden*, that the Constitution requires a jury to find (or a defendant to admit) that the defendant's ACCA predicates were committed on occasions different from one another."); Notification of Changed Legal Position, *United States v. Cook*, Sixth Cir. Case No. 22-5056 (Aug. 18, 2022); Gov't Response to Sent'g Mem., *United States v. Dutch*, No. 16-cr-1424 (D.N.M. July 20, 2022) ("*Wooden* makes it clear that the factors that inform the separate-occasions inquiry extend beyond the elements of an offense [and] [u]nder the Sixth Amendment, [] these facts cannot be found by a judge at sentencing." (citing *Descamps v. United States*, 570 U.S. 254, 270 (2013).)

This Court has thus far declined to revisit whether its current approach under *Hennessee* remains good law in light of *Wooden*, having denied a petition for rehearing en banc in *United States v. Williams*, 39 F.4th 342 (6th Cir. 2022) (No. 21-5856), so Mr. Cogdill raises this issue to preserve it. Regardless, even under *Hennessee*'s rule permitting judicial factfinding based on information in the *Shepard* documents, the

district erred when it found that Mr. Cogdill committed the two 2016 methamphetamine offenses on different occasions.

This Court reviews both questions *de novo*. *United States v. Hennessee*, 932 F.3d 437, 441 (6th Cir. 2019); *United States v. Southers*, 866 F.3d 364, 369 (6th Cir. 2017) ("We review the district court's decision that Defendant's offenses were committed on separate occasions under the ACCA *de novo*.").

**B.** **Under *Wooden*'s broader interpretation of "occasion," the *Shepard* evidence does not necessarily prove that Mr. Cogdill committed the offenses in PSR paragraphs 66 and 67 on occasions different from one another.**

Under *Wooden*'s new test, the government failed to prove with the relevant *Shepard* documents that Mr. Cogdill committed the offenses in paragraphs 66 and 67 on different occasions. Contrary to the district court's conclusion, the fact that that the two offenses were committed on different dates does not necessarily (or always) prove they were committed on different "occasions" as that term is now defined. Rather, the common nature and character of the drug offenses, committed in what must be presumed to be the same location and without an intervening arrest, should have led to the conclusion that they were

committed on a single occasion—just as that same conclusion would be inevitable under the well-established Guideline rules *Wooden* plainly invokes. If there is any doubt on this point, the Court should tip the scale in favor of Mr. Cogdill in light of the ACCA's purpose and the rule of lenity. Mr. Cogdill does not belong in the subset of serious "violent" offenders the ACCA is meant to target for harsher punishment.

1. In interpreting the concept of different "occasions" for ACCA purposes, the Supreme Court notably invoked two long-established rules in the Sentencing Guidelines that govern the way the court is to assess multiple instances of criminal conduct. The two rules point in opposite directions, but both weigh in favor of Mr. Cogdill in this case.

Weighing in one direction, the Court said that a "significant intervening event" might appropriately support a finding of different "occasions." *Wooden*, 142 S. Ct. at 1074. This factor echoes a familiar Guidelines concept under which prior sentences are counted separately for criminal history purposes when imposed for offenses separated by an intervening arrest, but will be counted as a single sentence if there is no intervening arrest and the defendant was sentenced on the same day,

even if the offenses were committed many days or months apart. U.S.S.G. § 4A1.2(a)(2).

Weighing in the other direction, the Court said that when two or more prior offenses are "similar" or "intertwined," sharing a "common scheme or purpose," they might appropriately support a finding of a single "occasion." *Wooden*, 142 S. Ct. at 1074. This factor echoes another familiar Guidelines' concept, this one the relevant conduct rule at U.S.S.G. § 1B1.3(a)(2) for grouped offenses. Under this rule, harms caused by multiple offenses committed as part of the "same course of conduct or common scheme or plan as the offense of conviction" are aggregated into a single measure for calculating the guideline range, even when spread out over months and sometime even years. Two or more offenses may constitute part of a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi"—even if they occur months apart. U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(i)). Two or more offenses may constitute the "same course of conduct" "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single

episode, spree, or ongoing series of offenses," U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(ii)), considering such factors as "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *See, e.g.*, *United States v. Will*, 612 F. App'x 265, 268 (6th Cir. 2015) (holding that drug sale committed two years before the prosecuted drug offense was part of "same course of conduct"). Temporal proximity matters, but a series of offenses occurring once a year could constitute the "same course of conduct" depending on the context. U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(ii)) (giving the example of failing to file tax returns).[2]

---

[2] *Wooden*'s choice of terminology also tracks the law of evidence. Conduct occurring years apart may also be viewed as part of a "plan" or "course of conduct" (echoing the "common scheme or purpose" in *Wooden*'s parlance) to establish intent under Rule 404(b) of the Federal Rules of Evidence. *See, e.g.*, *United States v. Harris*, 200 F. App'x 472, 509-10 (6th Cir. 2006) (holding that defendant's pattern of failing to file tax returns in earlier years was admissible to show intent) (citing *United States v. Ausmus*, 774 F.2d 722, 727-28 (6th Cir. 1985) (in prosecution for willfully failing to pay taxes, it was not an abuse of discretion to admit evidence that he failed to pay taxes for years before and after the years charged in the indictment, to show a pattern, plan, or scheme)).

2.  Applying these concepts in Mr. Cogdill's case, now through the prism of the full *Wooden* test as it applies to the occasions-different inquiry in the ACCA, the two drug offenses in paragraphs 66 and 67 cannot necessarily be deemed to have been committed on different occasions.  Rather, each factor weighs in favor of finding a single occasion, as follows:

**Close proximity.** The district court acknowledged that the *Shepard* documents do not establish that the offenses were committed in different locations, which means they could have been committed in the same location. This "important" factor weighs in Mr. Cogdill's favor. *Wooden*, 142 S. Ct. at 1074,

**No significant intervening event.** The government did not dispute that the two offenses were not separated by an arrest or any other "significant intervening event," so the balance on this factor also tips toward Mr. Cogdill. As the PSR itself establishes, the two offenses in paragraphs 66 and 67 were counted as one for the purpose of criminal history scoring, which necessarily means there was no intervening arrest. *See* U.S.S.G. § 4A1.2(a)(2). While the Court suggested that a "substantial gap[] in time" might equate to a "significant intervening

event" and support a finding of different occasions, 142 S. Ct. at 1071, the gap here of a few months in what could have been a continuous drug trafficking scheme, when there is no actual evidence that the methamphetamine was disconnected, should not be deemed "substantial," or at least is not dispositive here. (This is in contrast to the substantial gap of ten years between the conduct underlying these two 2016 convictions and the 2004 manufacturing offense committed in Georgia, a different location.)

**Common scheme or purpose.** The two offenses share a "common scheme or purpose" as that concept is well-known in drug cases. They are "substantially connected to each other by at least one common factor," which is their "common purpose" of trafficking in methamphetamine, and part of the "same course of conduct" by way of an "ongoing series" of "similar" offenses. U.S.S.G. § 1B1.3(a)(2) cmt. (n.5(B)(i)-(ii)). As this Court has recognized, drug sales two years apart may be considered part of the "same course of conduct," *see, e.g.*, *Will*, 612 F. App'x at 268, and this Court would surely find that these two offenses are part of the same course of conduct if this were a question under the Guidelines. Contrary to the district court's reasoning, the fact that one offense involved a sale

and the other possession with intent to sell, or the fact that Mr. Cogdill was prosecuted along with another person for the offense in paragraph 66 certainly would not prevent the two offenses from being deemed connected by a common purpose (to sell methamphetamine) under § 1B1.3(a)(2), so should not make a difference here, either.[3]

**History and purpose of the ACCA.** The purpose and severe impact of the ACCA counsels in favor of applying the *Wooden* test in favor of Mr. Cogdill when the two offenses would surely be counted as one under these pre-existing and well-recognized concepts, and there is no significant factor weighing to the contrary. There is nothing in the PSR about Mr. Cogdill's criminal history to suggest that he is "especially likely to inflict grave harm when in possession of a firearm," or that he belongs to the particular subset of repeat violent offenders the ACCA is intended

---

[3] The district court appears to have misspoken when it said the two offenses were different because "[o]ne offense is for selling drugs. The other offense is -- is for possession of drugs." (Sent'g Tr., R. 49, PageID #357.) The offense in paragraph 66 was for selling or delivering methamphetamine, and the offense in paragraph 67 was for possessing *with intent to sell or deliver* methamphetamine. The *Shepard* documents provided to the district court establish that the offenses both involved the similar purpose of selling methamphetamine. (Gov't Exh. to Response to Def.'s Objections to PSR., R. 42-4 to 42-8, PageID #198-212.)

to target. *Wooden*, 142 S. Ct. at 1074. According to the PSR's descriptions of his various offenses, he is more fairly described as a long-time drug user and small-time seller, who sometimes yells at people, has a drinking problem, and steals things. While he has amassed quite a few convictions over the years (he is 59 years old), many of them were for misdemeanor driving offenses or other low-level offenses for which he received little or no jail time. (*See, e.g.*, PSR ¶ 43 (consumption of alcohol by minor); PSR ¶ 46 (attempted petty theft); PSR ¶ 49 (disorderly conduct); PSR ¶ 52 (violation of protective order with property damage); PSR ¶ 55 (driving on suspended license); PSR ¶ 58 (possession of marijuana and reckless driving).) Mr. Cogdill has no apparent history of using guns to hurt or harm others, or even to threaten harm. He is not the ACCA's particular target offender.

**Rule of lenity.** As Justice Gorsuch in his concurring opinion in *Wooden* suggests, the multi-factor test for establishing the occasions-different fact will inevitably lead to ambiguity as to whether ACCA applies or not. *Wooden*, 142 S. Ct. at 1079-80 (Gorsuch, J., concurring). If in this case there remains ambiguity about the role of the concepts of proximity, "intervening events," "substantial gap[s] in time," and

"common scheme or purpose" as they relate to the Supreme Court's construction of the term "occasion" in the ACCA as applied here, the Court should employ the rule of lenity in Mr. Cogdill's favor. As this Court recognized in *United States v. Rockymore*, 909 F.3d 167, 172 (6th Cir. 2018), "a criminal defendant should not go from a sentencing range of zero-to-ten to a range of fifteen-to-life based on one possible reading of an ambiguous statutory scheme." *Id.* (citing *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion)). Rather, "[t]he rule of lenity necessitates that courts, when faced with two equally-persuasive interpretations of a criminal statute, accept the defendant's construction." *Id.*

3. Finally, the government will likely argue that this Court's post-*Wooden* decision in *United States v. Williams*, 39 F.4th 342 (6th Cir. 2022), forecloses Mr. Cogdill's arguments here. But *Williams* is distinguishable. The *Shepard* evidence in *Williams* established distinct robberies; the *Shepard* evidence here necessarily shows no more than a possibly continuous methamphetamine trafficking scheme with offenses committed at the  same location that could have involved the same drug source. Further, the Court in *Williams* was able to discern that the

robberies took place at "different stores," and did not share a "common scheme" the same way as the burglaries at the same location with the same *modus operandi* in *Wooden. Williams*, 39 F.4th at 350-51. The evidence here, more like the evidence in *Wooden*, establishes the common factors of location (same), drug type (methamphetamine), and purpose (to sell methamphetamine).

In sum, with each of the factors weighing in favor of Mr. Cogdill and none weighing against, the district court clearly erred when it found that the offenses in paragraphs 66 and 67 of the PSR were committed on different occasions, and therefore erred when it imposed the aggravated 15-year sentence under the ACCA. For this reason alone, the Court should vacate the sentence and remand for imposition of a sentence within the applicable 10-year statutory maximum for the unaggravated § 922(g)(1) offense for which he was convicted.

**C.** **The district court violated the Fifth and Sixth Amendments by finding the occasions-different fact when that fact was not alleged in the indictment, admitted by Mr. Cogdill, or found beyond a reasonable doubt by a jury.**

Alternatively, the district court erred by engaging in the "occasions-different" factfinding at all. As the government now concedes, *Wooden*

has made clear that the Fifth and Sixth Amendments require that the circumstance-specific fact that certain ACCA predicate offenses were committed on different "occasions" should have been charged in the indictment and found by a jury beyond a reasonable doubt. The occasions-different test turns on circumstances relating to the *commission* of the offenses and going well beyond their elements—encompassing such non-elemental facts as proximity, timing, intervening events, and course of conduct or common scheme.

The breadth of the inquiry is illustrated here. One of Mr. Cogdill's arguments in support of a finding that the offenses were related and intertwined was to point out that the methamphetamine involved in the two offenses in paragraphs 66 and 67 could have been taken from the same single amount of drugs. (Sent'g Tr. R. 49, PageID #339-40.) The district court rejected that argument, crediting instead its assumption that the methamphetamine involved in the September offense had to be different from the methamphetamine involved in the June offense, because "[d]rug dealers in general want to get rid of their drugs as quickly as possible." (Sent'g Tr., R. 49, PageID #352.) From this assumption, the district court inferred that Mr. Cogdill would not have still had in

September any of the methamphetamine he had in June—a fact the court said weighed against a finding of similarity.

But the district court could not constitutionally engage in this assumption or any other non-elemental factfinding about his prior convictions, so it erred when it imposed the aggravated 15-year sentence. While Mr. Cogdill recognizes that current Sixth Circuit law foreclose this argument and permits judicial factfinding based on non-elemental information contained in *Shepard* documents, he maintains that this Court's current approach to establishing the ACCA's occasions-different fact violates the Fifth and Sixth Amendments.

1. The constitutional tangle got started when the Court held early on that the ACCA's occasions-different requirement is not an element of the ACCA, to be charged and found by a jury beyond a reasonable doubt, but is instead a fact that the district judge may find at sentencing by a preponderance of the evidence. Under its original rule, sentencing judges could analyze all sorts of information that "lay behind" the elements of the conviction, such as the crime's time, place, and victim. *United States v. Brady*, 988 F.2d 664, 670 (6th Cir. 1993) (en banc); *see United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011). Though the law has since

evolved to reveal that permitting a sentencing judge to make this factfinding violates the Fifth and Sixth Amendments, this Court has not changed its approach to reflect this reality. Instead, it has merely tweaked the source of the information a district court may consult. While this preserves the *status quo*, it violates the Constitution.

In a series of decisions running from *Apprendi* to *Alleyne*, the Supreme Court developed a bedrock rule: The Fifth and Sixth Amendments require any fact that increases the statutory maximum or minimum penalty for a crime to be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 111 (2013). Facts determined at sentencing cannot enhance the statutory sentencing range. *Id.* There is just one exception to this rule which allows a sentencing court to consider "the fact of a prior conviction," and that exception is "narrow." *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 111, n.1.

To fit within this exception for "the fact of a prior conviction," the features of the prior conviction that trigger the increased penalty must be elements of the prior offense—*i.e.*, facts that the jury must find beyond

a reasonable doubt to sustain the conviction. *Mathis v. United States*, 136 S. Ct. 2243, 2248, 2252 (2016). Thus, when acting on *Apprendi*'s narrow exception for the "fact of a prior conviction," the sentencing judge cannot make findings about facts that lay behind that conviction, but rather can determine only "what crime, with what elements, the defendant was convicted of." *Id.* at 2252; *see also Descamps v. United States*, 570 U.S. 254, 269-70 (2013) ("the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances"); *Shepard v. United States*, 544 U.S. 13, 20-21, 26 (2013). If the features of the prior conviction are not "the simple fact of a prior conviction," but rather include circumstances that would let the judge "explore the manner in which the defendant committed that offense," they do not fit within the narrow exception to *Apprendi*. *Mathis*, 136 S. Ct. at 2252.

In short, the Supreme Court has established a distinction between "elemental facts" and "non-elemental facts." *Descamps*, 570 U.S. at 270. The former are the facts that either the jury necessarily found or the defendant necessarily admitted to sustain the conviction. The latter are facts that were legally extraneous to the conviction. When a federal

sentencing court determines the "fact of a prior conviction," it can consider only "elemental facts"—otherwise it will run afoul of the Sixth Amendment.

2. In light of the evolving law, and solely to safeguard its rule that a sentencing judge may engage in the factfinding necessary to establish that offenses were committed on different occasions, this Court has devised an accommodation with the *Apprendi* doctrine. Under its current rule, a sentencing judge deciding the different-occasions question is limited to considering *Shepard* documents, but is not limited to *Shepard* elemental evidence. *United States v. Hennessee*, 932 F.3d 437 (6th Cir. 2019) (holding that a sentencing judge may consult *Shepard* documents to discern the non-elemental facts of time place and victim of prior Tennessee robbery conviction to find that the defendant had committed two crimes "on occasions different from one another"). In other words, the sentencing judge can consider whatever non-elemental facts happen to appear in the relevant *Shepard* documents, even though the entire point of *Shepard* and its progeny is to limit the sentencing court's consideration to a certain type of evidence, namely, the evidence of elemental facts.

Though it preserves the *status quo*, the Court's accommodation conflicts with *Mathis* and the Fifth and Sixth Amendments. Under the reasoning of *Mathis* and its underlying Sixth Amendment concern, the only facts a district court may properly—or fairly—discern from the *Shepard* evidence are the elements of the offense. *Mathis*, 136 S. Ct. at 2252 ("A judge 'can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of."). This conclusion is confirmed by pre-existing Supreme Court precedent involving similar circumstance-specific facts related to the commission of prior offenses.

In *United States v. Hayes*, 555 U.S. 415 (2009), the Supreme Court addressed the definition of "misdemeanor crime of domestic violence" for purpose of the firearms ban at 18 U.S.C. § 922(g)(9). A person previously convicted of a "misdemeanor crime of domestic violence" may not possess a firearm, and if he does, is subject to conviction and punishment up to 10 years in prison. 18 U.S.C. § 922(g)(9). A "misdemeanor crime of domestic violence" is defined as an offense that is a misdemeanor and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former

spouse, parent, or guardian of the victim," or other specified domestic relationship with the victim. 18 U.S.C. § 921(a)(33)(A). The Court divided the question whether a person was convicted of a "misdemeanor crime of domestic violence" into two distinct components. The first requirement relates to the category of offense: The offense as defined by law must have as an element the use or threatened use of physical force or threatened use of a deadly weapon. *Hayes*, 555 U.S. at 421-22. This legal determination is made by the district court, subject to the ordinary limitations of the categorical approach. *United States v. Castleman*, 572 U.S. 157, 168 (2014).

The second requirement is circumstance-specific: The particular defendant who committed the offense must have been in one of the specified domestic relationships with the victim. *Hayes*, 555 U.S. at 422-23. This fact-based determination, because it is not elemental, is not made by the district court but must be proved by the government to the jury beyond a reasonable doubt (or admitted by the defendant). *Id.* at 426 ("To obtain a conviction in a § 922(g)(9) prosecution, the Government must prove beyond a reasonable doubt that the victim of the predicate offense was the defendant's current or former spouse or was related to

the defendant in another specified way."). This is true even when the relationship between the defendant with the victim is apparent from *Shepard* evidence of the conviction.

In *Nijhawan v. Holder*, 557 U.S. 29 (2009), the Court cited *Hayes* when it tangentially addressed prosecutions for illegal reentry after conviction for an aggravated felony under 8 U.S.C. § 1326. Illegal reentry carries a sentence of up to two years in prison, but if the defendant was previously convicted of an "aggravated felony" it carries a sentence of up to 20 years. 8 U.S.C. § 1326(a), (b)(2). As discussed above, the fact of the prior aggravated felony conviction is generally a sentencing factor that the judge can find at sentencing. *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998). But the statute discussed in *Nijhawan* defines some aggravated felonies by using two components: one being the fact of a prior conviction of a certain type of crime and the other being the fact that the defendant "committed" the prior crime in a specific way or under specific circumstances. *Nijhawan*, 557 U.S. at 37-38 (quoting 8 U.S.C. § 1101(a)(43)(K)(ii), (P)). The Supreme Court recognized that while the first part of this hybrid type of aggravated-felony definition falls within the *Almendarez-Torres* exception, the second part—the part pertaining

to how the defendant committed the crime—is "circumstance-specific," and falls beyond the bounds of the fact of a prior conviction. *Id.* at 40. As a result, that fact would have to be found by a jury in a criminal prosecution (i.e., treated as an element of the instant offense) to "eliminat[e] any constitutional concern." *Id.*

The inquiry under the ACCA similarly has two distinct components: (1) the legal determination that the defendant has three previous convictions for an offense that is categorically a "violent felony" or "serious drug offense," and (2) the factual determination that the defendant "committed" these three offenses "on occasions different from one another." 18 U.S.C. § 924(e). As with the facts pertaining to the defendant's relationship with the victim for purposes of § 922(g)(9), the facts pertaining to how, when, where, and why the defendant "committed" the ACCA predicate crimes "must be established," and to do so the government must prove them to the jury beyond a reasonable doubt. *Hayes*, 555 U.S. at 426.

This existing constitutional requirement has been both illuminated and confirmed by *Wooden*'s holding that the different-occasions clause requires factfinding that is "multifactored in nature" and considers "a

range of circumstances . . . relevant to identifying episodes of criminal activity," encompassing not only timing and proximity of location, but also intervening events, "similar" or "intertwined conduct," "uninterrupted course of conduct," and "common scheme or purpose," *Wooden*, 142 S. Ct. at 1068, 1070-71, with the latter phrases themselves invoking longstanding themes of common victims, common purpose, patterns, sprees, plans, and potentially encompassing conduct days or even months apart. The constitutional requirements have also been confirmed by the government, which now agrees that the "occasions-different" fact is for the jury to decide. While this Court has thus far declined to reconsider the question after *Wooden*, the Supreme Court is likely to take it up this Term or next. *See id.* at 1087 n.12 (Gorsuch, J., concurring in part and in the judgment) (recognizing that "[a] constitutional question simmers beneath the surface of today's case," and that there "is little doubt" that the Court will have to consider the constitutional question "soon").

# CONCLUSION

For the reasons stated, this Court should vacate Mr. Cogdill's sentence and remand this case so that the district court may resentence him without the ACCA enhancement.

Respectfully submitted:

Federal Defender Services
  of Eastern Tennessee, Inc.

By:

*s/ Jennifer Niles Coffin*
Assistant Federal Defender
Federal Defender Services of
  Eastern Tennessee, Inc.
800 South Gay St., Suite 2400
Knoxville, Tennessee  37929
(865) 637-7979

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, who may access this brief through the Court's electronic filing system. Any parties not listed on the electronic filing receipt will be served by regular U.S. Mail, postage prepaid.

Dated this 27th day of December, 2022.

*s/ Jennifer Niles Coffin*
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the requirements of the type-volume limitation of Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, as it contains 7,281 words, excluding the table of contents, table of citations, statement in support of oral argument, any addendum, and the certificates of counsel. Certification is based on the word count of the word-processing system used in preparing the brief, Microsoft Word for Mac VL 2021.

*s/ Jennifer Niles Coffin*

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## UNITED STATES OF AMERICA V. CALVIN COGDILL
### NO. 1:20-CR-87
### U.S. DISTRICT COURT FOR THE
### EASTERN DISTRICT OF TENNESSEE

| Record Entry No. | Document | Page ID# Range |
|:---:|:---|:---:|
| 1 | Indictment | 1 |
| 31 | Factual Basis | 64-66 |
| 37 | Presentence Investigation Report (Sealed) | 127-160 |
| 40 | Defendant's Objection to Presentence Report | 163-179 |
| 42 | Government's Response to Defendant's Objections to the Presentence Report and Exhibits | 181-212 |
| 47 | Judgment | 312-318 |
| 51 | Notice of Appeal | 372 |
| 49 | Transcript of Sentencing Hearing | 323-370 |
| 53 | Transcript of Change of Plea Hearing | 376-388 |